### SAMUEL F. FOSS *vs.* CHARLOTTE A. FOSS.

In a libel for a sentence of nullity of marriage, the parties are competent witnesses.

If a man marries a woman whom he knows to be with child, and whom he himself has debauched, being induced to marry her by her assurances that the child is his, and not taking any further steps to ascertain its paternity nor suspecting her of unchastity with any other man than himself, this court will not declare the marriage void, although it appears that the child must have been in fact begotten by another man.

LIBEL for a sentence of nullity of marriage, setting forth that the ceremony of marriage was performed between the libellant and the respondent on the 16th of April 1865; that he did not see her after September 1860 until January 5th 1865, after which time he visited her once in three weeks till April 16th that during all of said visits she represented herself as a chaste and virtuous girl; that in fact she was during all that time

pregnant of a child by some person to the libellant unknown, and that on the 8th of June 1865 she was delivered of a full grown child ; and that the libellant left her immediately thereafter and has not lived with her in any manner since. The respondent was defaulted.

At the hearing in this court, before *Gray*, J., the averments as to the marriage and the birth of the child were proved; and it appeared that the libellant did not meet the respondent in 1864, but visited her on January 5th 1865 and thereafter, as alleged. The libellant testified that they had sexual intercourse in January or February 1865; that before the ceremony of marriage she told him that she was with child by him, and he believed that to be the fact, and never knew or suspected that she had ever had sexual intercourse with any other man until May 25th, when his suspicions were excited, and he never lived with her afterwards.

The competency of the above testimony, and its sufficiency to warrant a decree of nullity of marriage, upon the present or an amended libel, were reserved for the determination of the whole court.

*J. W. Perry*, for the libellant.

No counsel appeared for the libellee.

BIGELOW, C. J. Of the competency of the libellant to testify in his own behalf we entertain no doubt. The libel is brought under Gen. Sts. *c.* 107, § 4, which provide that on proof of " fraud or other cause of nullity, the marriage shall be declared void by a sentence of divorce." This, therefore, is in a strict and proper sense a " divorce suit," in which, by the express provision of Gen. Sts. *c.* 131, § 14, a party is made a competent witness for himself or the other party to the suit.

But we think it equally clear that the court would not be warranted in declaring the alleged marriage void on the facts stated by the libellant in his testimony on the hearing of the case. The difficulty is not that adequate cause for a decree of nullity is not set forth in the libel, but that the evidence entirely fails to support the essential allegations on which a sentence annulling the marriage for the cause set forth must be based. Whenever fraud *is*

relied on as the ground of invalidating a contract, it is material not only to prove false and fraudulent representations, but also that they were made under such circumstances as to lead to a reasonable inference that a party was thereby deceived and induced to enter into the contract which he seeks to avoid. If it appears that he had the means of ascertaining the falsity of the statements made to him, or that the nature of the transaction and the circumstances attending it were such as to put a reasonable person on inquiry, the presumption of deceit arising from proof of the fraud will be repelled and the party will be left to bear the consequences of his own want of due diligence and caution. A party cannot escape from obligations which he has voluntarily assumed, on the ground that he has been deceived and defrauded, if he neglects to avail himself of means of information within his reach, or if he places a blind or wilful confidence in representations which were not calculated to deceive a man of ordinary prudence and circumspection, for although he may have been in point of fact deceived and imposed upon, yet it is a consequence or result of his own folly or neglect. Cases of this kind fall within the rule expressed by the maxim, *Vigilantibus non dormientibus jura subveniunt.*

These familiar and well settled principles are to be observed and adhered to with scrupulous care and fidelity in their application to the contract of marriage — a contract which, from its peculiar nature and on grounds of public policy, the law regards as especially sacred and inviolable, and which cannot be avoided or set aside on the ground of fraud except on the most plenary and satisfactory proof of deceit and imposition touching matters which constitute the *essentialia* of the marriage relation. *Reynolds* v. *Reynolds,* 3 Allen, 605, 608. It seems to us that, on applying the principles above stated to the facts proved on the hearing, it is clear beyond question that if the libellant was deceived and imposed upon at all by the statements of the woman with whom he subsequently intermarried, he nevertheless entered into the contract of marriage under circumstances which repe: the inference of such legal fraud and deceit as are necessary to be proved in order to warrant a court of law in setting aside and annulling the contract.

Foss *v.* Foss.

It appears that, after a very brief acquaintance with the defendant, during which he had visited her only two or three times, he had carnal knowledge of her person; that this took place between two and three months prior to the solemnization of the marriage; that he well knew before the execution of the contract by the marriage that she was pregnant with child, but was told by her that she was with child by him, and that he did not know or suspect that she had had sexual intercourse with any other man. We have therefore a case in which a man intermarried with a woman whom he knew to be unchaste, whom he had himself debauched, and of whose condition of pregnancy he was well aware. He took no steps to ascertain the truth of her statements concerning the paternity of the child, but, relying solely on her assurances on that subject, he entered into the contract of marriage. It seems to us that on these facts he was guilty of a blind credulity, from the consequences of which the law will not relieve him. His knowledge of the respondent's unchastity and of her actual pregnancy was sufficient to put a reasonable man on his inquiry. It does not appear that he could not have readily ascertained her previous intimacy with another man. Certainly by a resort to a medical examination, or by a delay of the execution of the marriage contract for a brief period, he could have easily put the truth of her statements to a decisive test. Whatever may have been the motives which led him to forbear all inquiry, it is a sufficient answer to his claim to be relieved from his contract that the deceit, if any, which was practised upon him was submitted to voluntarily and wilfully, and that he cannot be allowed to escape from his obligations by proof of facts the knowledge of which he might have obtained by the exercise of a proper and reasonable prudence and discretion. *Libel dismissed.*