SAMUEL E. LYMAN *vs.* LUCY A. LYMAN.

First Judicial District, Hartford, March Term, 1916.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

The fact that a man had sexual intercourse with a woman prior to their marriage does not necessarily and as matter of law preclude him from obtaining a divorce for "fraudulent contract" under General Statutes, § 4551; for such immorality is, or at least may be, entirely separate and apart from the marriage contract.

Without attempting to define the meaning of that expression as thus used, it is sufficient to say that deception successfully practiced by one of the parties upon the other with respect to a fact whose existence or nonexistence would defeat some essential purpose of the marriage and work a practical destruction of that relation, will entitle the injured party to a divorce.

In the present case the defendant represented to the plaintiff, who had recently had sexual intercourse with her, that her then-existing pregnancy was due to him and requested him to marry her. The plaintiff, who possessed the average experience and intelligence of one of his age and in his class of life and who acted reasonably in view thereof, believed this statement to be true and was induced thereby to assent to the marriage. In fact the statement was false, as the defendant's pregnancy was due to her illicit relations with another before she met the plaintiff, as she well knew; and the date of her subsequent delivery made it clear that the plaintiff could not have been the father of the twins then born to her. *Held* that under these circumstances the plaintiff was entitled to a divorce on the ground of fraudulent contract.

Whether the injured party acted as a reasonably prudent person would have acted under the circumstances, in believing the fraudulent representations, is a matter of fact for the trier in view of all of the circumstances in the case.

Lyman *v.* Lyman.

The maxim that a plaintiff seeking equity must come with clean hands
has relation to the particular subject of investigation, and does not
apply to collateral or extraneous matters.

Whatever interest the State may have in the marriage contract, it cer-
tainly cannot look favorably upon the successful perpetration of a
fraud the normal consequences of which involve matters of pre-
sumptive paternity and the right of succession to property.

Argued March 7th—decided April 19th, 1916.

ACTION for a divorce, for an annulment of the mar-
riage because of alleged fraud of the defendant, and for
a decree relieving the plaintiff from any legal obligation
to support children of whom he was not the father, born
to the defendant about four months after the marriage,
brought to and tried by the Superior Court in Windham
County, *Webb, J.;* facts found and judgment rendered
for the defendant, and appeal by the plaintiff. *Error
and new trial ordered.*

The plaintiff, then about twenty-five years of age and
possessed of at least the ordinary intelligence and expe-
rience of young men of his age and class, first met the
defendant, then twenty years of age and possessed of
the average experience and intelligence of young women
of her age and class, on June 28th, 1914. On July 8th,
1914, they, for the first time, had sexual intercourse
with each other, and on subsequent dates had similar
intercourse. Later the defendant represented to the
plaintiff that she was pregnant as the result of such
intercourse, and asked him what he was going to do
about it. These representations, in so far as they re-
lated to the responsible author of her condition, were
untrue. She was in fact pregnant as the result of inter-
course had with another man prior to her acquaintance
with the plaintiff, as she well knew or should have
known. He, believing her statements, thereupon
promised to marry her. Subsequently, at an interview
between the parties and the plaintiff's father, the same

representations were made by the defendant, and the same promise repeated by the plaintiff. At this interview she said that she was not quite two months advanced in pregnancy, that she wanted the plaintiff to marry her, and that she would make him a good and faithful wife. The plaintiff's promises were made in consequence of his belief in the truth of her representations, were entirely voluntary, and no threats of bastardy or any other legal proceedings were made.

On September 8th, 1914, the parties were married and took up their abode in the home of the plaintiff's father. They continued to reside there until the day before the defendant's confinement, when she was taken to a hospital where, on January 10th, 1915, she was delivered of twins, of which the plaintiff was not the father, born after the full normal period of gestation as the result of her incontinence prior to her acquaintance with him. Upon the birth of the children the plaintiff first became aware of the falsity of the defendant's representations to him, and thereupon ceased to cohabit with her, and shortly afterward brought this action.

*William A. King* and *Samuel B. Harvey,* for the appellant (plaintiff).

*Thomas J. Kelley,* for the appellee (defendant).

PRENTICE, C. J. The plaintiff, having had sexual intercourse with the defendant before marriage, was induced to marry her by her representations made to and believed by him, that she was with child as the result of such intercourse, whereas the fact was, as she knew or ought to have known, that she was pregnant by another man. The first knowledge that he had of the truth came to him when she was delivered. There-

upon he ceased to have further relations with her, and brought this action praying for an annulment of the marriage or a divorce. Counsel for the plaintiff concede that he is not entitled to an annulment, and he clearly is not. *Gould* v. *Gould,* 78 Conn. 242, 249, 61 Atl. 604.

In the Superior Court they asserted their claim for relief by way of divorce, under that provision of § 4551 of the General Statutes which authorizes divorces for "fraudulent contract." His complaint was dismissed for the reason that he had not presented a case within the statute, since "fraudulent contract," as used in it to describe a ground for divorce, did not comprehend a situation like that shown, which includes as one of its factors prenuptial intercourse between the parties. The court held that the existence of that intercourse precluded him, as a matter of law, from having the marriage, which he had entered into, dissolved.

What amounts to "fraudulent contract," as that term is used in our divorce statute, and to that or other equivalent language, as used in the law, written or unwritten, elsewhere, to express a recognized condition justifying the annulment or dissolution of a marriage, has been much discussed, but no satisfactory and comprehensive definition applicable to all situations has been arrived at or attempted to be arrived at. *Gould* v. *Gould,* 78 Conn. 242, 249, 261, 61 Atl. 604. It is certain, however, that wherever there is a fraud on the part of one of the parties amounting to "a fraud in the *essentialia* of the marriage relation," or, as JUDGE HAMERSLEY expressed it in his opinion in *Gould* v. *Gould, supra,* page 261, whenever there is a "deception in respect to some fact whose existence or nonexistence may affect in some certain way the very essence of the marriage relation, resulting in a lawful marriage which practically operates as a fraud upon the deceived

spouse, and the existence or nonexistence of the fact thus concealed or misrepresented must operate, as between the parties to the marriage, to prevent some essential purpose of marriage and work a practical destruction of that relation," there exists such fraud as the law contemplates, and such as renders the marriage contract fraudulent. *Reynolds* v. *Reynolds*, 85 Mass. (3 Allen) 605, 608.

In consonance with this principle, the courts are practically agreed in holding that antenuptial pregnancy by another man, if concealed by the wife from the husband, who was himself innocent of improper relations with her, is a fraud upon him justifying a divorce or annulment of the marriage, as the appropriate remedy in the jurisdiction may be. *Gould* v. *Gould*, 78 Conn. 242, 262, 61 Atl. 604; *Reynolds* v. *Reynolds*, 85 Mass. (3 Allen) 605; *Harrison* v. *Harrison*, 94 Mich. 559, 54 N. W. 275; *Baker* v. *Baker*, 13 Cal. 87; *Morris* v. *Morris*, Wright (Ohio) 630.

The plaintiff's case does not come under the operation of this rule because of his prenuptial intimacy with the defendant, and her counsel contends that the existence of that fact creates an obstacle, insurmountable as a matter of law, to the dissolution of the marriage tie on account of the fraud charged. The Superior Court so held, and denied the plaintiff's prayer for a divorce upon that ground, and that alone. In so ruling it had the support of a majority of the cases which have had occasion to pass upon the particular question involved. *Crehore* v. *Crehore*, 97 Mass. 330; *States* v. *States*, 37 N. J. Eq. 195; *Seilheimer* v. *Seilheimer*, 40 N. J. Eq. 412; *Fairchild* v. *Fairchild*, 43 N. J. Eq. 473, 11 Atl. 426; *Franke* v. *Franke*, 31 Pac. Rep. (Cal.) 571; *Bartholomew* v. *Bartholomew*, 14 Pa. Co. Ct. 230; *Hoffman* v. *Hoffman*, 30 Pa. St. 417; *Scroggins* v. *Scroggins*, 14 N. Car. (3 Dev. L.) 535.

*Foss* v. *Foss*, 94 Mass. (12 Allen) 26, is another case which commonly is given a prominent place in citations of authorities sustaining the existence of a principle of law, amounting to a fixed rule, that prenuptial incontinence by the parties to a marriage is sufficient of itself to create a bar to an annulment or dissolution of it on the ground of fraud arising from the concealment of pregnancy by another man. This case, antedating most of those cited, has been much relied upon as an authority in subsequent cases, and evidently has played a prominent part in shaping the reasons advanced by them for the principle they assert. Our examination of it, however, fails to disclose that it furnishes support for that principle. Its decision was made to rest upon the state of facts before the court. It did not, in its discussion, appeal to or lay down a fixed rule of law forbidding a divorce where there has been prenuptial intimacy between the parties. It held the plaintiff—and by necessary implication any plaintiff under similar circumstances—up to a high standard of duty in the matter of investigation and inquiry before accepting as true, and acting upon, representations made by the woman to him, but nowhere do we find either statement or intimation that if that duty had been performed, and the plaintiff had, nevertheless, been deceived, he could have had no relief because the law did not permit it. It remained for the six line opinion in *Crehore* v. *Crehore*, 97 Mass. 330, to give an appearance of sanction to the doctrine in support of which these two Massachusetts cases have been so often cited. It is by no means clear, however, that even the last of these cases was not decided upon its own facts, and with no purpose of recognizing or asserting a rule of law for the summary disposition of all cases presenting the salient features now under consideration.

Upon an examination of the cases cited above—which include the major portion and more important of those in point which have come under our notice in our search for the reasons which have been assigned for the conclusion reached, that the law forbids an annulment or dissolution of marriages entered into under the conditions under discussion—we find that, although appearing in various forms and guises in the different cases, they resolve themselves into four, which may be summarized as follows: (1) That the plaintiff in such case does not come into court with clean hands. *States* v. *States*, 37 N. J. Eq. 195. (2) That the husband, knowing of the wife's unchastity and pregnancy, was put upon his inquiry as to her condition and the paternity of any child she might have conceived, and that in the pursuit of his inquiry he was, in view of what he knew, put upon his guard as to the confidence to be reposed in her word, so that he was not entitled to rely upon it but was bound to pursue searching independent investigations. *Foss* v. *Foss*, 94 Mass. (12 Allen) 26, 29; *Seilheimer* v. *Seilheimer*, 40 N. J. Eq. 412, 413. (3) That having experienced and participated in the woman's incontinence, he was thereby sufficiently apprised of her want of chastity to deprive him of the right to complain that he was deceived by her false assurance that he was the only participant in her illicit intercourse. *Franke* v. *Franke*, 31 Pac. Rep. (Cal.) 571. (4) That having taken the woman to wife for better or for worse, he ought not to be permitted to say that she was worse than he expected. *Scroggins* v. *Scroggins*, 14 N. Car. (3 Dev. L.) 535, 545.

The familiar maxim that he who comes into equity must come with clean hands, is not used to convey the idea that no person is permitted to invoke the aid of a court of equity whose life and conduct has not been above reproach; nor does it mean, as one of the New

Jersey cases cited appears to imply, that a litigant, to obtain relief in equity, must have been without fault in all his dealings with or conduct toward the party against whom the relief is asked. *Seilheimer* v. *Seilheimer,* 40 N. J. Eq. 412, 413. The maxim "only applies to the particular transaction under consideration, for the court will not go outside of the case for the purpose of examining the conduct of the complainant in other matters or questioning his general character for fair dealing. The wrong must have been done to the defendant himself and must be in regard to the matter in litigation." *City of Chicago* v. *Stock Yards Co.,* 164 Ill. 224, 238, 45 N. E. 430; *Langdon* v. *Templeton,* 66 Vt. 173, 182, 28 Atl. 866; Bispham's Principles of Equity (9th Ed.) p. 72. "When a court of equity is appealed to for relief it will not go outside of the subject-matter of the controversy, and make its interference to depend upon the character and conduct of the moving party in no way affecting the equitable right which he asserts against the defendant, or relief which he demands." 1 Pomeroy on Equity Jurisprudence (3d Ed.) § 399. "The maxim that 'he who comes into equity must come with clean hands,' has no such application as the defendant seeks to give to it. It refers solely to willful misconduct in regard to the matter in litigation. . . . Though an obligation be indirectly connected with an illegal transaction, it will not be thereby barred from enforcement, if the plaintiff does not require the aid of the illegal transaction to make out his case." *Yale Gas Stove Co.* v. *Wilcox,* 64 Conn. 101, 128, 29 Atl. 303.

The matter in litigation in this case is the marriage contract, which the plaintiff is seeking to have terminated. The antecedent illicit relations form no part of that contract. They were only incidental circumstances which, while doubtless influencing the plaintiff

to enter into it, were not influences brought to bear by him to induce the defendant to do so. They formed no part of its consideration. They gave the defendant no rights which the plaintiff is now trying to avoid, and imposed upon him no obligation which he is trying to evade. His conduct in consenting to marry the defendant and in marrying her, believing as he did that she was pregnant by him, was not only without fault on his part, but most commendable. It was a step without advantage to him, if the children were not his, as they were not, but of infinite importance to her as a possible means of protecting her reputation and the fair name and good standing of her child or children. His willingness to do all he could to repair the wrong he believed that he had done her in being the cause of her pregnancy, and to accept the burden which his moral duty, under the circumstances as they were presented to him, called upon him to bear, certainly did not make his hands unclean in the matter of the contract from which he seeks relief, nor for that matter as respects herself.

The reasoning attempted to be summarized under the second head strikes us as leading to a conclusion quite different from that in support of which it has been advanced. As used in *Foss* v. *Foss*, 94 Mass. (12 Allen) 26, assuming that its minor propositions and deductions are sound, it leads not illogically perhaps to the conclusion at which the case arrives, but when it is appropriated, as it has been, to the support of the proposition that prenuptial incontinence by the parties to a marriage interposes an absolute legal bar to an annulment or dissolution of that marriage, a striking case of *non sequitur* is presented. Why, for instance, an investigation and extreme care and caution in accepting the woman's representations, if such investigation, care and caution would be of no avail, and the law would still interpose its forbidding command?

The third reason is taken verbatim from the opinion in *Franke* v. *Franke*, 31 Pac. Rep. (Cal.) 571. From the citations made in its support it would appear that the court's intention was to express in brief form the reasoning more fully elaborated in the Massachusetts and New Jersey cases, and assert the conclusion which has been deduced therefrom. Whether so or not, the incompleteness of the argument is clearly seen when it is remembered that the burden of the plaintiff's complaint is not want of chastity, to which the quotation is confined, but pregnancy by another of which nothing is said. The wide gap between the two conditions as grounds for divorce remains unbridged. If, perchance, the court intended to bridge this gap by carrying the argument further, so as to include in it as a reason that, on account of his unlawful relations with the defendant, the plaintiff had put himself outside of the protection of the law so that he must endure in silence the wrong subsequently done him, there would result an infliction of a punishment for which we know no authority. In this State a statute (§ 1315) prescribes a punishment for the offence the plaintiff committed. Is another to be judicially added in withdrawing from him the protection which the law ordinarily gives to persons defrauded to their harm? "In doing an unlawful act a person does not necessarily put himself outside the protection of the law. He is not barred of redress for an injury suffered by himself, nor liable for an injury suffered by another, merely because he is a lawbreaker." *Monroe* v. *Hartford Street Ry. Co.*, 76 Conn. 201, 206, 56 Atl. 498.

The fourth reason, which appears in *Scroggins* v. *Scroggins*, 14 N. Car. (3 Dev. L.) 535, 545, is not one which comports with the policy of our law as expressed in our statutes regulating divorce and our decisions thereunder.

The minority of cases expressing or plainly implying

views at variance with those just considered are confined, as far as we have observed, to *Sissung* v. *Sissung*, 65 Mich. 168, 31 N. W. 770 (decided by a divided court); *Scott* v. *Shufeldt*, 5 Paige (N. Y.) 43, 44; *Wallace* v. *Wallace*, 137 Iowa, 37, 42, 114 N. W. 527 (based in part upon a statute); and *McCulloch* v. *McCulloch*, 69 Tex. 682, 7 S. W. 593. It is unnecessary to review these cases. It is sufficient for present purposes to say that we fully concur with the majority opinion in the first named case in saying that it is consonant with equity and justice that the law should authorize the "nullifying of a marriage procured by the fraud of the woman in representing to the man that she is pregnant by him, when, at the time of such representation, she knows she is pregnant by a stranger, and not by him." Page 173. We can conceive of few graver frauds than this, nor one which, if successful, is attended with more serious results; and we can see no good reason why, if the essentials of a fraud, as respects the representations by the one party and the reasonable reliance thereon and action induced thereby by the other, are present, the one thus defrauded should be compelled to endure in silence the situation which has thus been brought upon him with all the consequences that it entails, and all by reason of his efforts to play the manly part and repair his supposed wrong to the best of his ability. That seems to us to be imposing a grievous punishment for a purely laudable action. The punishment attaches to the marriage and not to the earlier impropriety, and subjects a man to penalties for an act which had in it no semblance of wrongdoing either legal or moral.

In view of the new trial which must be ordered and the prominence which has been given to the opinion in *Foss* v. *Foss*, 94 Mass. (12 Allen) 26, and to the subordinate propositions it advances, we ought to add that we are unable to agree with that case in all of its

subordinate propositions or with its ultimate conclusion as to the duty, in the matter of independent and searching investigation, of a man in the position that Foss and this plaintiff found themselves when the partners in their illicit relations made to them the representations they did as to their pregnancy and the paternity of their children before being justified in accepting those representations as true and acting upon them.

One who seeks to be relieved from the consequences of an act or undertaking of his on the ground that it was induced by false and fraudulent representations, must indeed show that he was justified under all the circumstances in relying upon the representations as true. This justification, however, is established if he shows that he acted reasonably, that is, as a reasonably prudent and intelligent man would act under like circumstances. The law asks no more. It does not ask that the injured party should be unduly incredulous and skeptical, resort to extremes of precaution, or exhaust all possible sources and means of investigation before he believes. Especially is this true in cases where the facts lie within the knowledge of the author of the representations and within his alone. In such cases it is the general rule that the one to whom the representations are made is justified in relying upon them, in the absence of any knowledge of his own, or of any facts which should arouse suspicion and cast doubt upon their truth. 2 Pomeroy on Equity Jurisprudence (3d Ed.) § 891. See also *Wilson* v. *Nichols*, 72 Conn. 173, 178, 43 Atl. 1052; and *di Lorenzo* v. *di Lorenzo*, 174 N. Y. 467, 473, 67 N. E. 63.

So it is that this plaintiff is only called upon to establish a belief that the circumstances reasonably justified, or in other words, that he acted in respect to that matter as a reasonable man might be expected to do. He did, as the court has found, be-

lieve the woman's story, which was, in fact, true, except as to the responsible author of her condition. The facts within his knowledge pointed very directly to its truth in its entirety. There was no source or means of verification or disproof, in the particular concerning which it was false, available to him or to anybody, save through the medium of a medical examination, or a delay which would have defeated one of the chief objects sought by the marriage. The pertinent question is was the belief, which he entertained as the result of the defendant's statements and the facts of which he had personal knowledge, one at which he could reasonably have arrived and acted upon under the circumstances? The question thus presented is one of fact for the trier, and is to be determined upon the evidence in the case.

If it be said that the marriage contract is one *sui generis* in that the State is a party to it, and as representing society has an interest in it and its incidents, and that, therefore, any question touching its dissolution should be passed upon with that fact and the interests of the State and society in view, we are at a loss to discover how that admitted fact furnishes support for the proposition which has been invoked to defeat the plaintiff's prayer for relief. *di Lorenzo* v. *di Lorenzo*, 174 N. Y. 467, 472, 67 N. E. 63. Certainly neither society nor the State representing it can have an interest favorable to the successful perpetration of a fraud, or to the perpetuation of the normal consequences of one like this which do not end with the marriage tie, but involve matters of presumptive paternity, the obligations which go with paternity, and the right of succession to property.

There is error and a new trial is ordered.

In this opinion the other judges concurred.