CHRISTOPHER SANSONE *v.* THOMAS CLIFFORD ET AL.
(14219)

PETERS, C. J., SHEA, GLASS, COVELLO and BORDEN, Js.

Argued March 20—decision released June 18, 1991

*Richard S. Scalo,* with whom were *Abraham I. Gordon* and, on the brief, *Ronald D. Japha,* for the appellant (plaintiff).

*Patricia Cofrancesco,* for the appellees (defendants).

SHEA, J. After his employment as building inspector had been terminated on January 12, 1988, the plaintiff, Christopher Sansone, brought this action against the defendants, the city of Ansonia, Thomas Clifford, its mayor, and Daniel Nugent, who was appointed to succeed Sansone. While the action was pending, a

fourth defendant, Edward Liskiewicz, who had been appointed to replace Nugent after he had resigned his position, was joined. The principal issue is whether Sansone was removed unlawfully before the expiration of his term of office, which he claims continued: (1) for four years, as provided by General Statutes § 29-260 (a)[1] rather than for two years, as provided by § 9 of the Ansonia charter;[2] and (2) until a qualified successor had been appointed, as both the statute and the

[1] General Statutes § 29-260 (a) provides as follows: "The chief executive officer of any town, city or borough, unless other means are already provided, shall appoint an officer to administer the code for a term of four years and until his successor qualifies and quadrennially thereafter shall so appoint a successor. Such officer shall be known as the building official. Two or more communities may combine in the appointment of a building official for the purpose of enforcing the provisions of the code in the same manner."

[2] Section 9 of the Ansonia charter provides in relevant part:

"The mayor shall, within ten days after his qualification, and at least seventy-two hours prior to a regular meeting of the board of aldermen, or a special meeting of the board duly called for that purpose, file with the city clerk the nominations for the following officers and boards as hereinafter specified, such nominations to be confirmed or rejected separately and individually by said board of aldermen at its next meeting after they are made. In the event of any nominations being rejected by said board, the mayor shall, at least seventy-two hours before the next regular meeting of said board, or a special meeting of said board duly called for that purpose, file with the city clerk nominations for other persons in the place of those rejected, unless otherwise provided for in this Act; and in the event of further rejections, shall continue to file nominations in the manner and form aforesaid in place of those rejected until all of the officers and boards provided for in this section shall be confirmed and filled. In the event of the neglect or the refusal of the mayor to file said nominations as hereinbefore provided, the board of aldermen, at its next regular meeting, or a special meeting duly called for that purpose, may fill the vacant offices and boards hereinafter specified and confirm other persons in the place of those previously rejected; and said nominations and confirmations shall be made in such manner as to divide said offices and said boards as nearly as possible equally between the two (2) leading political parties. Whenever any vacancy shall occur in any appointive office, it shall be filled for the unexpired term in the same manner as herein provided for nominations and confirmations of said office. The officers to be appointed shall be . . . a *building inspector to serve for the term of two (2) years.*" (Emphasis added.)

charter provide. The trial court concluded that: (1) the charter provision limiting the term of a building inspector to two years should prevail and that Sansone's appointment had expired on December 31, 1987; (2) because the office had remained vacant until his successor, Nugent, was appointed on January 12, 1988, Sansone had lawfully held the position until that date and was entitled to receive $360, the portion of salary allocable to that period; (3) Sansone could not hold over after Nugent's appointment, because the position was not vacant thereafter, having been filled by Nugent and Liskiewicz, both of whom, though disqualified by virtue of nonresidency, had performed the duties of a building inspector as de facto officers; (4) Sansone was entitled to a writ of quo warranto ousting Liskiewicz from the position for nonresidency but to no other relief; and (5) Sansone had proved neither his claim of libel, which was based on certain statements of the defendant Clifford,[3] nor his claim of a violation of his federal constitutional rights, based on 42 U.S.C. § 1983.

On appeal from the judgment, Sansone contends that: (1) his term as building inspector was four years as provided by § 29-260 (a) and was not governed by the charter provision; (2) he should be awarded damages for the loss of his salary until such time as a qualified successor is appointed; (3) he is entitled to a writ of mandamus restoring him to the position of building inspector, as well as the quo warranto relief of ousting the incumbent, Liskiewicz, which the court had granted; and (4) he should also receive an award of damages for violation of his constitutionally protected property rights pursuant to § 1983. We agree with the trial court's resolution of all but the second of these issues, and therefore reverse the judgment in part and remand for further proceedings.

---

[3] In this appeal Sansone does not contest the decision of the court rejecting his libel claim.

The trial court found the following facts. Sansone was first appointed as the building inspector for Ansonia in 1972 and was periodically reappointed to that position for two year terms. He was last reappointed on December 5, 1985, to a two year term beginning January 1, 1986 and ending December 31, 1987. Under an ordinance in force until October 6, 1988, he also served as the zoning enforcement officer by virtue of his appointment as building inspector.[4]

When Clifford was elected mayor of Ansonia in November, 1987, he decided to replace several incumbent officials, including Sansone, whom he informed of his decision in December, 1987. Although Sansone's term expired on December 31, 1987, he continued to perform his duties as building inspector until January 12, 1988, when Clifford's nomination of Nugent to that office was confirmed by the board of aldermen.

Sansone commenced this action on May 9, 1988. While it was pending, Nugent submitted his resignation, which was accepted on September 13, 1989, when Clifford's nomination of Liskiewicz to the position was confirmed. Just before argument of this appeal, Liskiewicz, who, like Nugent, was not a resident of Ansonia, resigned.

I

We agree with the trial court that § 9 of the Ansonia charter, rather than § 29-260 (a), fixes the term of office for the position of building inspector in Ansonia and, accordingly, that Sansone's term expired on December 31, 1987, two years after his most recent appointment began on January 1, 1986.[5] Since 1961,

---

[4] Section 225.1 of the Ansonia Code was amended effective October 7, 1988, to provide for a separate office of zoning enforcement officer.

[5] In *Marsala* v. *Bridgeport,* 15 Conn. App. 323, 325, 544 A.2d 191 (1988), the Appellate Court declared that "General Statutes § 29-260 sets forth

§ 9 has provided that the municipal officers to be appointed by the mayor shall include "a building inspector to serve for the term of two years." 30 Special Acts 282, No. 369, § 4 (1961). The position of building inspector had been created in 1905 without a specification of the term of office. 14 Special Acts 733, No. 302, § 3 (1905).

Since 1945, when the state building code was adopted, § 29-260 (a) or its predecessors have provided for the appointment of "an officer to administer the code," referred to as "the building official." General Statutes (Cum. Sup. 1945) §§ 103h, 104h. In 1967 the statute was amended to specify that such appointment would be for a "term of four years." Public Acts 1967, No. 874. The clause, "unless other means are already provided," was contained in the original enactment and has been retained in the present version of § 29-260 (a). At a minimum, the import of this proviso was to leave in place existing mechanisms established by the towns for administration of the state building code. Thus, it would exempt Ansonia's charter provision for appointment of a building inspector with a term of two years, adopted in 1961, from the requirement of a four year term for a "building official" to administer the code, which was not enacted until 1967.

This interpretation of § 29-260 (a) is supported by General Statutes § 7-193 (b) of the Home Rule Act, which provides, with respect to municipal officers, that "[a]ll such officers . . . shall be . . . appointed . . .

the term of office of a building official," in deciding that the term of a new appointee to the position of building inspector for Bridgeport began on the date of his appointment rather than upon the date of expiration of the four year term of the preceding appointee. Sansone relies on the quoted dictum to support his claim that § 29-260 is controlling in this case. In *Marsala,* however, the issue of whether a Bridgeport charter provision establishing a different term of office was applicable was never raised and was not addressed in the opinion.

in the manner provided by the general statutes, *except as otherwise provided by the charter* . . . ." (Emphasis added.) "From a reading of the provisions of the Home Rule Act, General Statutes §§ 7-187—7-201, it is evident that the legislature intended to give 'home rule towns' the freedom to retain aspects of special acts and charters suited to particular local needs and practices." *Caulfield* v. *Noble,* 178 Conn. 81, 90, 420 A.2d 1160 (1979). "The rationale of the act, simply stated, is that issues of local concern are most logically answered locally, pursuant to a home rule charter, exclusive of the provisions of the General Statutes." Id., 86. "[I]t has been held that a general law, in order to prevail over a conflicting charter provision of a city having a home rule charter, must pertain to those things of general concern to the people of the state, and it cannot deprive cities of the right to legislate on purely local affairs germane to city purposes." Id., 87. Apart from the Home Rule Act, we have held that "the general rule is that '[a] special and local statute, providing for a particular case or class of cases, is not affected by a statute general in its terms, broad enough to include cases embraced in the special law, unless the intent to repeal or alter is manifest.' *State ex rel. Wallen* v. *Hatch,* 82 Conn. 122, 124, 72 A. 575 [1909]." *East Haven* v. *New Haven,* 159 Conn. 453, 468, 271 A.2d 110 (1970).

While the proper administration of the state building code may well be a matter of statewide concern, such that a conflicting charter provision must give way, the duration of the term of the official charged with that responsibility must be deemed primarily a matter of local concern. If the people of Ansonia prefer to appoint such an official for two rather than four years, as § 9 of the charter indicates, we cannot perceive how any substantial interest of the state is affected adversely.

## II

Section 144[6] of the Ansonia charter provides that all city officers "shall hold their respective offices until their successors shall be chosen and shall have duly qualified." Section 29-260 (a) similarly provides for the appointment of "an officer to administer the code for a term of four years and until his successor qualifies . . . ." There is no conflict between the statute and the charter in regard to extending the definite term fixed for a building inspector until the appointment of a qualified successor. The city has conceded that neither Nugent nor Liskiewicz, who were appointed to the office of building inspector following the expiration of Sansone's two year term, was a "resident elector" of Ansonia, as required by § 145[7] of the charter for elected or appointed city officers. The city also has not challenged the validity of such a requirement. See *Carofano* v. *Bridgeport*, 196 Conn. 623, 638–43, 495 A.2d 1011 (1985). Sansone claims that, whether the term of his appointment was for two or four years, he is entitled to retain his position until the present time, because neither of his successors has been eligible for appointment and thus neither appointee has ever qualified to replace him as building inspector.

The trial court ruled that, despite the ineligibility of Nugent and Liskiewicz, they became de facto officers

---

[6] Section 144 of the Ansonia charter provides: "OFFICERS TO HOLD OFFICE UNTIL SUCCESSORS CHOSEN AND QUALIFIED.

"All officers of said city, unless prevented by death, inability, suspension, or removal, shall hold their respective offices until their successors shall be chosen and shall have duly qualified, unless otherwise provided herein."

[7] Section 145 of the Ansonia charter provides: "CITY OFFICERS TO BE RESIDENT ELECTORS, ETC.; WHEN NOMINATIONS OF MAYOR TO BE FILED.

"Every officer of said city chosen by the electors, or nominated by the mayor and confirmed by the board of aldermen, shall be a resident elector of said city unless otherwise specified in this Charter. . . ."

upon their appointments and had "color of title to the office of building inspector while they held that position." Accordingly, the court concluded that Sansone's right to the office terminated on January 12, 1988, when Nugent was appointed, and that he was entitled to no salary after that date. We disagree with this analysis.

On several occasions this court has considered the effect of provisions for extending the tenure of a public officer upon the expiration of the term fixed for his appointment. *State ex rel. Barnes* v. *Holbrook,* 136 Conn. 312, 70 A.2d 556 (1949); *State ex rel. Ryan* v. *Bailey,* 133 Conn. 40, 48 A.2d 229 (1946); *State ex rel. McCarthy* v. *Watson,* 132 Conn. 518, 45 A.2d 716 (1946); *State ex rel. Hendrick* v. *Keating,* 120 Conn. 427, 433, 181 A. 340 (1935). We have uniformly held that "[i]f . . . the term of office is not only for a definite time but until a successor is appointed and qualified, an incumbent holding over is a de jure officer and, unless from the particular language of the statute or the particular circumstances of the case a different legislative intent appears, there is no vacancy in the office within a provision authorizing an appointment in such a contingency." *State ex rel. McCarthy* v. *Watson,* supra, 527–28. The purpose of a provision extending a definite term of office until a successor has qualified is "to prevent a public inconvenience arising from the want of a party authorized for the time being to discharge the duties of a public office." *People* v. *Tilton,* 37 Cal. 614, 621 (1869), quoted with approval in *State ex rel. McCarthy* v. *Watson,* supra, 529. "The provision that an incumbent shall continue in office until his successor shall be appointed and qualified clearly shows that the legislature definitely contemplated the fact that there might be a failure to appoint . . . and expresses an intent that in such an event the incum-

bent is to continue to hold the office." Id., 533. "[O]ne continuing in office under such a provision occupies it de jure and not de facto." Id., 530, 532; see 3 E. McQuillin, Municipal Corporations (3d Ed. Rev.) § 12.110.

Sansone, therefore, was entitled to hold the office of building inspector until the appointment of a qualified successor, an event that may have occurred just prior to the argument of this appeal, but not previously.[8] He was effectively removed from his position without cause upon the illegal appointment of Nugent, who took possession of the office. The city has argued that Sansone abandoned his claim to the office by his failure to bring this action until almost four months after the termination of his employment.[9] Such a delay is not unreasonable, given the complexities of this case, and cannot reasonably be regarded as a sufficient basis for finding that Sansone had relinquished his claim to the office or to damages resulting from his unlawful removal. The city also relies upon the principle that an appointee to a public office for which he is ineligible may be found to be an officer de facto and that his

[8] During the argument of this appeal, counsel for the defendants reported that after Liskiewicz's resignation as building inspector had been accepted on the previous evening, the defendant Clifford had appointed another person, reportedly a resident of Ansonia, to the position. The appointment, however, was provisional, for a period not to exceed ninety days, until the appointee should obtain a license from the state building inspector as provided by General Statutes § 29-262 (a). Sansone has questioned the authority to make such a provisional appointment under the charter, but we need not resolve that issue at this time.

[9] The memorandum of decision mentions that Sansone "relinquished the position of building inspector on January 12, 1988, when Nugent assumed the office" and also that "Sansone did not bring this action until May 1988, and did not perform any duties as building inspector in the previous four months." The trial court also refers to the principle that "[a]bandonment of public office can occur when an officer acquiesces in his unlawful removal from office or unlawful appointment of a successor." It is unclear whether the court actually found such an abandonment, at least with respect to Sansone's claim for damages.

actions in performing the duties of the office are valid. *Furtney* v. *Zoning Commission,* 159 Conn. 585, 595–97, 271 A.2d 319 (1970). The rule that the acts of a de facto officer are as valid and effective as if he held office de jure was designed to protect the public and third persons in transactions with the officer in which there is reasonable reliance upon his legal capacity to perform the duties of the office. Id., 597. It is inapplicable to the circumstances of this case, in which no third parties who have relied upon the actions of a de facto officer are involved. Such a rule was never intended to bar an incumbent, who is holding over beyond his definite term pursuant to legislation authorizing his tenure until the appointment of a qualified successor, from pursuing a claim for damages because of his unlawful removal from office. We conclude that the trial court was mistaken in holding to the contrary and that the case must be remanded for further proceedings for the determination of the damages sustained by Sansone from his unlawful removal from office.

## III

The trial court, in considering the quo warranto count of the complaint, found that Liskiewicz, who held the position of building inspector at the time of trial, was not a resident of Ansonia and was, therefore, ineligible for that office under § 145 of the charter. The court ordered his ouster but refused to restore Sansone to that position, as prayed for in the mandamus count of the complaint.

The city has not pursued its cross appeal of the order ousting Liskiewicz because of his ineligibility. Indeed the propriety of that order became moot when Liskiewicz's resignation from the position was accepted the day before argument of this appeal. Accordingly, we need not address the issue further. *Reynolds* v. *Vroom,* 130 Conn. 512, 515, 36 A.2d 22 (1944).

Sansone claims that he was entitled to a writ of mandamus restoring him to the position of building inspector once the court had determined that no qualified successor had been appointed to fill that office. We have held that "[m]andamus, a cause of action with deep roots in the American tradition, is the proper remedy for reinstatement of a public officer who, despite a clear legal right to remain in office, has been wrongfully ousted from that position." *Hennessey* v. *Bridgeport,* 213 Conn. 656, 658–59, 569 A.2d 1122 (1990). Contrary to the view of the trial court, Sansone did have a clear legal right to remain in office until a qualified successor had been appointed, as we have determined in part II. Mandamus is not automatically available upon establishment of such a right, however, because it is subject to equitable principles involving the exercise of discretion. Id., 659; *Sullivan* v. *Morgan,* 155 Conn. 630, 635, 236 A.2d 906 (1967); *Hackett* v. *New Britain,* 2 Conn. App. 225, 229, 477 A.2d 148, cert. denied, 194 Conn. 805, 482 A.2d 710 (1984). Because Sansone's entitlement to the position would terminate as soon as a qualified successor had been appointed, it would probably have been an exercise in futility to attempt to reinstate him as building inspector in view of the evident determination on the part of the appointing authority to replace him.[10] The trial court did not abuse its discretion in denying a writ of mandamus on the ground that the likelihood of his retention of the position for any substantial period of time was so remote that he would probably "derive no substantial or practical benefit from it" and that "the only practical relief here would be monetary damages."

IV

Sansone claims that he is entitled to an award of "twice the full amount of such wages" as may be found

---

[10] See footnote 8, supra.

to have been due him, together with "reasonable attorney's fees," as provided by General Statutes § 31-72 "[w]hen any employer fails to pay an employee wages" earned. The statute is applicable to municipal employers. General Statutes § 31-71a (1). The term wages, however, is defined to mean "compensation for labor or services rendered by an employee . . . ." The statute would not apply to Sansone's claim for back pay from the date of his replacement in office by Nugent on January 12, 1988, because he rendered no "labor or services" as building inspector after that date.

The city, nevertheless, failed to pay the "wages" that Sansone earned during the first twelve days of January, 1988, while he continued to occupy the position of building inspector. The trial court found that $360 was due him for this period. The court found also, however, that the event "took place in an atmosphere of uncertainty as to [Sansone's] rights," and that Sansone had not proved "that the city's failure to make payment was unreasonable or done in bad faith." "[I]n an action for wages brought pursuant to General Statutes § 31-72, awards for double damages and attorney's fees are inappropriate in the absence of the trial court's finding of 'bad faith, arbitrariness or unreasonableness.' " *Matteson* v. *Great Eastern Development, Ltd.,* 18 Conn. App. 618, 621, 559 A.2d 1165 (1989), quoting *Crowther* v. *Gerber Garment Technology, Inc.,* 8 Conn. App. 254, 265, 513 A.2d 144 (1986). Sansone challenges the finding of lack of bad faith and arbitrariness as wholly inconsistent with Clifford's flagrant violation of the charter in twice appointing nonresidents to the position of building inspector. Those appointments, however, are only remotely related to the failure to pay Sansone the $360 due him for services performed prior to his termination on January 12, 1988. The court found that Sansone "never submitted any bill and did not

make written demand upon city officials for payment of his salary after he was replaced as building inspector." Nothing in the evidence compelled a finding that the failure to pay the wages found to be due Sansone resulted from bad faith or unreasonableness.

## V

Sansone's final claim is that he was deprived of his right to remain in office until a qualified successor had been appointed and that the termination of his employment by the city following Nugent's illegal appointment violated his constitutionally protected property interest in continued employment, thus entitling him to the remedies of damages and attorney's fees provided by 42 U.S.C. § 1983. Although we have concluded that the termination of Sansone's employment by the appointment of an unqualified successor was illegal and entitles him to damages for his removal from office, we conclude that the nature of his interest in continued employment as building inspector was too tenuous to constitute a property interest protected by the fourteenth amendment to our federal constitution. "It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined." *Board of Regents* v. *Roth,* 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). Sansone could not reasonably have expected that his employment by the city would continue for any definite period of time beyond the expiration of his two year term of office on December 31, 1987, or have relied upon its continuance, because, as he realized, a valid appointment of his successor could have been made at any time after that date. A constitutionally protected property right must be formed of weightier considerations than the possibility that an appointing authority, in disregard of a charter provision, may persist in naming successors

who are plainly unqualified to hold the office involved. Such a gossamer hope for an extension of a fixed term of office, resulting from disregard of a charter provision, is too ephemeral to qualify as a constitutional property interest.

Unlike those cases involving public employees who have tenure or fixed terms of employment that may reasonably be expected to continue, and whose termination without a hearing to determine whether there is good cause for discharge may give rise to a § 1983 action, Sansone was in effect an employee at will with no right to such a hearing once his employment ceased by virtue of a valid appointment of his successor. We conclude that his § 1983 claim is without merit.

The judgment is affirmed except for the rejection of Sansone's claim for damages for the period of time that he would have been able to remain in office until a valid appointment of his successor had been made; with respect to his claim for damages for such period, we remand the case for further proceedings in the trial court.

In this opinion the other justices concurred.