## JOSEPH S. SANTANGELO v. ELITE BEVERAGE, INC., ET AL.
## (AC 20601)

Mihalakos, Spear and Flynn, Js.

Argued April 30—officially released September 18, 2001

*Otto P. Witt,* for the appellant (plaintiff).

*Roland Stefandl,* pro se, the appellee (named defendant), filed a brief.

*Opinion*

FLYNN, J. The plaintiff, Joseph S. Santangelo, appeals from the judgment of the trial court in favor of the individual defendant, Roland Stefandl, on counts one, three, five and six of the plaintiff's complaint, and for the plaintiff on counts two and four against the corporate defendant, Elite Beverage, Inc. (Elite), pursuant to which the court awarded damages to the plaintiff in the total amount of $12,957.91. On appeal, the plaintiff claims that the court improperly (1) refused to pierce the corporate veil to find Stefandl personally liable for the sums adjudged due the plaintiff from Elite, (2) offset damages on the basis of a transaction that was not the subject of the present action, (3) improperly calculated vacation pay, (4) failed to hold Stefandl personally liable

for the payment of vacation benefits and (5) failed to award double damages plus attorney's fees with respect to his vacation pay pursuant to General Statutes § 31-72. We agree that the court improperly offset the award of damages on the basis of a transaction separate from the subject of this action, but disagree with the plaintiff's remaining claims. Therefore, we affirm in part and reverse in part the judgment of the trial court.

The following relevant facts are necessary for our resolution of the plaintiff's appeal. In 1994, Stefandl recruited the plaintiff to establish a bottling business and to serve as its plant manager. From 1994 until 1997, the plaintiff worked in the bottling business, which operated under the name Elite Beverage, Inc., and was wholly owned by Stefandl, its president. During the course of his employment until his termination in 1997, the plaintiff was employed by Elite and paid by Elite and Stefandl.

In its memorandum of decision, the court made the following findings of fact and conclusions of law. As to the first count, the court concluded that Elite was the plaintiff's employer at the time he was discharged. The court further concluded that the corporate veil should not be pierced to hold Stefandl personally liable for past due vacation pay because the plaintiff had not proven the elements of the instrumentality rule that was articulated in *Zaist* v. *Olson*, 154 Conn. 563, 575, 227 A.2d 552 (1967), which are necessary to warrant such relief. Specifically, the court found that the plaintiff had failed to prove "that [Stefandl had used his control over Elite as its president and sole shareholder] to 'commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights.' "

As to the second count, the court concluded that, on the basis of the plaintiff's weekly pay of $1350 in 1997,

the plaintiff had seven days of vacation pay due him and that after making an allowance for the fact that he was paid twice for the last week that he was employed, he was entitled to $540. The court noted that it would not award double damages, attorney's fees or costs, the awarding of which are within the court's discretion, because the plaintiff had failed to satisfy the requisite factors as set forth in *Sansone* v. *Clifford*, 219 Conn. 217, 229, 592 A.2d 931 (1991).

Regarding the third count, in which the plaintiff sought to hold Stefandl personally liable for a loan that the plaintiff had made to the corporation, the court declined to pierce the corporate veil for the same reasons it stated with respect to count one and found in favor of Stefandl. As to the fourth count, the court concluded that the plaintiff had advanced $35,000 to Elite's corporate bank account that had not been repaid except for $5000 that the plaintiff had paid back to himself from corporate accounts before he was discharged from employment. Although the court found those sums unpaid, the court also concluded that Elite should receive a $24,999 equitable setoff because of an undisclosed profit that the plaintiff took at Elite's expense on equipment he sold to Elite at the time he was hired. The court then awarded prejudgment interest of $2416.91 to the plaintiff. We do not summarize the court's findings of fact and conclusions of law as to the remaining counts because they are not the subject of this appeal.

I

The plaintiff first claims that because there was evidence that Elite transferred $500,000 from its corporate accounts to the corporate accounts of PolyChem Systems, Inc., and because Stefandl was the sole shareholder of both corporations, the court should have found that this transfer was made to avoid claims by

Elite's creditors, such as the plaintiff. He further maintains that under those circumstances, the court was required to pierce the corporate veil and to hold Stefandl personally responsible for corporate debts owed to the plaintiff.

The instrumentality rule announced in *Zaist* v. *Olson,* supra, 154 Conn. 575, requires a controlling stockholder to have committed a fraudulent or wrongful act or a dishonest or unjust act or to have violated a statutory or other legal duty in violation of the plaintiff's legal rights that proximately causes the plaintiff's injury. In the present case, the court did not make any such findings concerning the purposes for which the transfer was made.

It is incumbent on the appellant to provide an adequate record for appellate review. See Practice Book § 60-5. Here, the plaintiff did not seek an articulation of the court's findings. See Practice Book § 66-5. "Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the plaintiff's claim] would be entirely speculative." (Internal quotation marks omitted.) *Gladstone, Schwartz, Baroff & Blum* v. *Hovhannissian,* 53 Conn. App. 122, 127, 728 A.2d 1140 (1999).

The plaintiff's failure to seek an articulation of the court's reasoning as to its determination results in a record that is inadequate for our review. Accordingly, we decline to review the plaintiff's claim.

II

We next address the plaintiff's claim that the court improperly offset damages on the basis of a transaction that was not the subject of the present action. We agree.

The plaintiff argues that the court improperly gave Elite a credit of $24,999 against a $35,000 loan balance that the court found due the plaintiff as a result of a loan he had made to Elite from his personal funds. The plaintiff claims that the court's action was improper because of our Supreme Court's holding in *DeCecco* v. *Beach*, 174 Conn. 29, 35, 381 A.2d 543 (1977). The plaintiff maintains that the defendants offered no evidence to show that they did not materially benefit from the agreement under which the court found that the plaintiff had furnished equipment to Elite during its organizational phase for which he was paid $25,000, after representing that it had cost him that sum to purchase it.

The court found that the equipment had cost the plaintiff only $1. The plaintiff maintains that even if the proof offered was legally sufficient, the equipment transaction was a separate and distinct earlier transaction that was not related to the loan in litigation and, therefore, it could not properly be used to reduce the amount he was due on the loan.

We note that count four sounded in unjust enrichment against Elite. Because unjust enrichment is an equitable remedy, one who seeks to prove that he is entitled to the benefit of equity must first come before the court with clean hands. *Cohen* v. *Cohen*, 182 Conn. 193, 201, 438 A.2d 55 (1980). *DeCecco* requires that the party seeking to bar equitable relief by invoking the clean hands doctrine must show that his opponent engaged in wilful misconduct with regard to the matter in litigation. *DeCecco* v. *Beach*, supra, 174 Conn. 35. That maxim *"only applies to the particular transaction under consideration,* for the court will not go outside of the case for the purpose of examining the conduct of the complainant in other matters or questioning his general character for fair dealing." (Emphasis added; internal quotation marks omitted.) *Lyman* v. *Lyman*, 90 Conn. 399, 406, 97 A. 312 (1916). "When a court of equity is

appealed to for relief *it will not go outside of the subject-matter of the controversy*, and make its interference to depend upon the character and conduct of the moving party in no way affecting the equitable right which he asserts against the defendant, or relief which he demands." (Emphasis added; internal quotation marks omitted.) Id.; 1 J. Pomeroy, Equity Jurisprudence (3d Ed. 1905) § 399. In other words, "[t]he dirt upon [the plaintiff's] hands must be his bad conduct in the transaction complained of. If he is not guilty of inequitable conduct toward the defendant in that transaction, his hands are as clean as the court can require." 2 J. Pomeroy, Equity Jurisprudence (5th Ed. 1941) § 399.

The matter in litigation in this case involves the repayment of personal loans that the plaintiff made to Elite in 1996 and payment for equipment that the plaintiff provided to Elite in 1994. The plaintiff's prior advancement of equipment to Stefandl at the inception of the bottling business for a price of $25,000 is not at issue in this action. That claim was not pleaded in the complaint. Furthermore, as the court pointed out in its memorandum of decision, the $25,000 of equipment "is a different collection of equipment than that which is the subject of [c]ount [f]ive of the complaint."[1] As such, the first advancement of equipment was "outside of the subject-matter of the controversy"; (internal quotation marks omitted) *Lyman* v. *Lyman*, supra, 90 Conn. 406; and, thus, improperly considered by the court in this action. Additionally, the pleadings do not contain any counterclaim by Elite, alleging that the plaintiff owed it money arising from the same transaction or occurrence, nor was any special defense of setoff or recoupment pleaded. Accordingly, the plaintiff's profit of $24,999 did not make his hands unclean in the matter of the

---

[1] Count five of the complaint alleges that the plaintiff provided equipment to Stefandl in 1994 and that its fair market value was $16,750.

repayment of loans and payment for the second advancement of equipment from which he seeks relief.

## III

We now address the plaintiff's claims that the court improperly (A) calculated vacation pay, (B) refused to hold Stefandl personally liable for the payment of vacation benefits and (C) failed to award double damages plus attorney's fees with respect to the plaintiff's vacation pay. We disagree.

## A

The court considered all of the evidence and found that the only employment policy that the plaintiff had proved was that he was entitled to three paid sick days per year and five vacation days per year. The court also found that there was no provision for carrying over unused days from one work year to another. Therefore, the court concluded that the plaintiff, at most, was entitled to his accruals for 1997, less whatever he had used in that year. At a weekly pay rate of $1350, the plaintiff's daily rate was $270. After deducting one day of leave that the plaintiff testified to having taken, the court found that seven days were unused at the time of discharge so that the most the plaintiff would be entitled to recover was $1890. The court also found, however, that the defendant mistakenly had paid the plaintiff twice for the last week that the plaintiff had worked. The court, therefore, awarded the plaintiff $540.

We conclude that a fair reading of the court's memorandum of decision warrants the findings that were made. The plaintiff has failed to show that those findings were clearly erroneous. Although the plaintiff offered testimony that he was entitled annually to two weeks of vacation under the defendants' vacation policy, the court found that the plaintiff's credibility on

that issue was compromised. It is the sole province of the court to determine the credibility of witnesses and the weight to be given to the evidence. *Blatt* v. *Board of Assessment Appeals*, 63 Conn. App. 512, 515–16, 776 A.2d 1187 (2001). "The trial court, as the finder of fact, is in the best position to assess the credibility of the witnesses testifying before it." (Internal quotation marks omitted.) *Thomsen* v. *Aqua Massage International, Inc.*, 51 Conn. App. 201, 206, 721 A.2d 137 (1998), cert. denied, 248 Conn. 902, 732 A.2d 178 (1999). We cannot disturb those findings or the court's ultimate conclusions because they are not clearly erroneous. See *In re Martin K.*, 56 Conn. App. 10, 11, 741 A.2d 10 (1999).

B

As to the plaintiff's claim that Stefandl is personally liable for the payment of vacation benefits, the plaintiff argues that the court should have held Stefandl liable in accordance with General Statutes § 31-76k. Section 31-76k provides in relevant part: "If an *employer policy* . . . provides for the payment of accrued fringe benefits upon termination, including but not limited to paid vacations, holidays, sick days and earned leave, and an employee is terminated without having received such accrued fringe benefits, such employee shall be compensated for such accrued fringe benefits . . . ." (Emphasis added.) "[T]he term employer policy relates not to the employer's intent with regard to a single employee, but to its intentions regarding either its employees generally or discrete classes of employees." (Internal quotation marks omitted.) *Fulco* v. *Norwich Roman Catholic Diocesan Corp.*, 27 Conn. App. 800, 806–807, 609 A.2d 1034 (1992), appeal dismissed, 226 Conn. 404, 627 A.2d 931 (1993).

Here, the plaintiff has failed to establish that there was an "employer policy" entitling him to payment of

accrued benefits upon termination. The Elite employee benefits policy did not allow employees to accrue or to carry over fringe benefits. Accordingly, the plaintiff's claim is without merit.

C

As to the remaining claim that the court improperly declined to award double damages and attorney's fees pursuant to § 31-72, our Supreme Court has held that such awards for double damages are "inappropriate in the absence of the trial court's finding of bad faith, arbitrariness or unreasonableness." (Internal quotation marks omitted.) *Sansone* v. *Clifford*, supra, 219 Conn. 229. Section 31-72 provides for "a discretionary award of double damages, with costs and reasonable attorney's fees, to employees who are successful in actions against their employers for wages due." *Crowther* v. *Gerber Garment Technology, Inc.*, 8 Conn. App. 254, 264, 513 A.2d 144 (1986).

In the present case, the court found that § 31-72 gave it "the discretion to award double damages, attorney's fees and costs upon finding a violation of § 31-76k." The court found "none of the factors that would justify the exercise of that discretion to be present. See *Sansone* v. *Clifford*, [supra, 219 Conn. 229]." On the basis of our review of the record, we conclude that the court properly concluded that an award of double damages, attorney's fees and costs was inappropriate because there is no evidence in the record that the defendants acted with bad faith or arbitrarily or unreasonably.

The judgment is reversed as to the offset of damages and the case is remanded with direction to render judgment for the plaintiff in the amount of $37,956.91, plus interest on the $24,999 that improperly was set off. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.