[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above-captioned cases were consolidated in the Judicial CT Page 437 District of Meriden after the transfer of Case No. 0247574 to Meriden from the Superior Court Judicial District of Ansonia-Milford. The initial complaint of the plaintiff NYCONN Data Systems, Inc. was returned to this court on December 1, 1992. It sought a temporary and permanent injunction restraining Cottrell, a former employee, from violating a covenant in an employment contract wherein defendant had agreed that he would not solicit or attempt to solicit the customers, employees or trainees of the plaintiff during his employment or for a period of one year after termination of his employment. Defendant was terminated on October 23, 1992. A second count in this complaint alleged that defendant had certain property of plaintiff in his possession and refused to return it.
Plaintiff moved for a temporary injunction on or about November 13, 1992. Negotiations resulted in a stipulation dated November 25, 1992 between the parties which permitted the court to grant a temporary injunction enjoining the defendant from disclosing confidential information, soliciting plaintiff's existing customers or active prospects, adopting or using materials developed or provided by plaintiff, breaching any other term of the employment agreement dated January 27, 1992.
Thereafter on January 21, 1993, the defendant Richard J. Cottrell, Jr., filed a counterclaim alleging his termination on October 23, 1992 was without just cause, being motivated by plaintiff's desire to avoid payment of commissions due and owing to the said Richard J. Cottrell, Jr. The defendant founded his counterclaim in four separate counts:
First Count, (Wrongful Discharge in Violation of Connecticut Public Policy);
Second Count, (Breach of Good Faith and Fair Dealing);
Third Count, (Breach of Contract);
Fourth Count, (Refusal to Pay Wages in Violation of Sections 31-71c,31-71d, 32-72 General Statutes)
By way of relief the plaintiff in the counterclaim claimed compensatory damages and statutory damages as provided in General Statutes § 31-72.
At or about the time he filed his counterclaim, the defendant CT Page 438 Richard J. Cottrell, Jr. submitted an affidavit in conjunction with an application for a prejudgment remedy which asserted he was owed over $101,000 in commissions.
In August of 1995, after the commencement of trial, the plaintiff filed an amended complaint in three counts. Count one asserts that during the course of his employment defendant made knowing misrepresentations to customers of plaintiff causing damage to plaintiff;
Count two asserted that during the course of employment with the plaintiff defendant submitted false and forged documents to International Business Machine Corporation (hereinafter, IBM), a business partner of the plaintiff, causing a financial loss to the plaintiff as well as damage to plaintiff's business reputation with IBM.
Count three alleged the defendant during the course of his employment with plaintiff violated company rules and underquoted prices without prior authorization from the plaintiff.
The plaintiff sought damages for these violations.
The defendant denied the material allegations in plaintiff's amended complaint.
On August 23, 1995, the defendant amended his counterclaim. The amendment made one essential change in the four counts of his counterclaim filed January 21, 1993, in that plaintiff specifically alleged intentional actions by the principals of the plaintiff.
In September of 1995 the plaintiff answered this counterclaim denying all the material allegations thereof. In addition the plaintiff pleaded setoff, claiming that certain losses discovered after plaintiff's terminations should be an offset to any compensation found to be due the plaintiff on the counterclaim.
Defendant (plaintiff on the counterclaim) denied there was any substance to the setoff allegations.
The case of Cottrell v. Chernesky, 0247574, was filed in the judicial district of Milford, returnable December 6, 1994. It was transferred to the judicial district of Meriden on December 28, 1994, where it was consolidated with Case No. 0242202, NYCONNCT Page 439Data Systems v. Richard Cottrell.
In this case Mr. Cottrell alleges in count one of his complaint that he relied upon certain representations from the defendant and engaged his services to implement a computer solution required by a customer of the plaintiff, United BeautyServices. Plaintiff contends that these representations were false, that defendant knew they were false and were made by defendant Chernesky to induce the plaintiff to engage the services of the defendant and pay him compensation therefore and to secure for the defendant a position with plaintiff's employer, NYCONN Data Systems, Inc. Plaintiff alleges that as a result of the false representations of the defendant, he was caused to lose substantial commissions and bonuses from the failed United Beauty Services transaction.
In the second count of his complaint, plaintiff alleges he relied upon further representations of the defendant in order to complete customer fulfillment options forms (CFOs) for the International Business Machines Corporation (IBM), a business partner of his employer NYCONN Data Systems, Inc. These documents were necessary in order for plaintiff to receive bonuses from IBM. Plaintiff contends that these representations were false and the defendant knew they were false and were made by the defendant to induce the plaintiff to rely upon said representations in filling out the CFOs with false information. Plaintiff alleges that as a result of these misrepresentations by the defendant he was terminated from his employment with NYCONN Data Systems and suffered defamation of character.
The defendant answered these allegations by either denying them or leaving plaintiff to his proof.
These two actions are grounded upon the same fact pattern which gave rise to the termination of employment of Richard Cottrell as a marketing representative and vice president of business solutions by his employer, NYCONN Data Systems, Inc. In the first case, plaintiff NYCONN alleges it terminated Cottrell because he knowingly submitted false and forged documents to IBM, a business partner of the plaintiff.
In the second case Cottrell acknowledges that the representations he made in the CFOs submitted to IBM were false but contends that they were innocently made based on the false representations made to him by the defendant in the second case, CT Page 440 Thomas Chernesky.
Extensive hearings were held consuming almost seventeen nonconsecutive trial days. Both parties filed briefs, and final argument took place on November 22, 1995. The testimonial and documentary evidence enables the court to find that:
 A
Richard J. Cottrell, Jr. was hired by the NYCONN Data Systems, Inc. on February 1, 1992 (Exh. 1). He was hired to manage the new business territory in the IBM Norwalk Branch office at a starting salary of $45,000 per year. In addition to salary and expenses, he was entitled to coverage, territory accounts, commissions at 25 percent of NYCONN's net payments (less customers' credits) from IBM. New account bonus payments from IBM were to be paid at 25 percent for the first ten new accounts, and 33 percent for new accounts beyond that.
The offer letter provided that service commission will be paid according to the territory agent commission plan (Exh. M). The offer letter covered third party commission payments on software. Application specialists commissions were covered by the 1992 commission plan. Other third party hardware/software opportunities not covered by the plan were to be handled on a situational basis as were all consulting opportunities not covered by the offer letter.
The court finds that defendant was hired under a contract of indefinite duration without any oral or written commitment from plaintiff that would take him out of the status of an employee dischargeable at the will of employer. Somers v. CooleyChevrolet, 146 Conn. 627 (1959). The court further finds that the employer NYCONN Data Systems, Inc. obligated itself to pay commissions to the plaintiff while he was so employed for contracts he secured in accordance with the offer letter (Exh. 1) and the 1992 commission plan (Exh. M). The basis for calculating these commissions was net revenue received by NYCONN from these sales. In the context of these two cases, the defendant Richard Cottrell has sought to convince the court that he is entitled to a commission of 33 percent once the customer agreed to a sale. The court finds to the contrary. The court finds that it was NYCONN policy and practice to pay commissions after calculation of net revenue received from the customer. Net revenue consists of gross revenue received from the customer and revenue from IBM CT Page 441 less expenses including the cost of hardware, software, service or transaction costs, shipping expense and taxes. To the extent that the defendant is entitled to commissions on contracts generated by him before his termination but which resulted in net revenue to NYCONN received after his termination on October 23, 1992, the court finds that the appropriate commission rate is 25 percent on hardware and software and 7 percent on service billing.
Cottrell received written notification of his termination by NYCONN by letter dated October 26, 1992. He was probably terminated orally on October 23, 1992, by Dennis DeCesare, executive vice president of NYCONN.
The letter advised him that the cause for termination was falsifying IBM CFO documents in Bob Frelow's agent territory during the months of September and October 1992.
Cottrell by letter dated October 28, 1992 (Exh. M) accepted the terms of termination. Cottrell denied falsifying the IBM CFO document but admitted misrepresenting that the end user had received the product. He admitted he was wrong in not releasing the product to the customer stating "I illustrated poor judgment and fully understand your position."
Cottrell attached a schedule of commissions due him as of his termination date stating he expected payment in full by December 1, 1992, or in reference to United Beauty Supply, payment when NYCONN performs its obligations as stated in your contract. This schedule referred to commissions due from IBM, from the Anacomp account, Santa Fuel account and from the United Beauty Supply account. Included in this account was a claimed commission for the sale and installation of twenty-five point of service units at a commission rate of $976.47 per unit. These units were to be installed at United Beauty at some future date.
The court finds that the reason given by Mr. DeCesare for the termination falsifying IBM CFO documents in "Bob Frelow's agent territory during the months of September and October", 1992 was real and not a pretext for retaining for itself the commissions earned by Cottrell on the United Beauty Account.
The defendant has endeavored to prove that although he signed a number of CFOs which were submitted to IBM based on the signature of Tom Chernesky, he did so with the permission of Mr. CT Page 442 Chernesky. Mr. Chernesky denies he gave such permission to Mr. Cottrell and the court finds he did not. The court finds the testimony of Mr. Frelow and Mr. Chernesky credible and persuasive of the fact that the IBM material allegedly located at V.W. Wilcox and Arrow Paper was not in fact there as alleged by Mr. Cottrell in CFOs in question. Subsequent to his termination, NYCONN was charged back commissions for other CFOs submitted by the defendant to IBM because audits indicated the customer had not received the material. Although these CFOs were a violation of company policy, they were not discovered until after defendant's termination and therefore were NOT a factor in his termination. This evidence, however, further undermines defendant's credibility.
 I
The first count of defendant's counterclaim is premised on a wrongful discharge in violation of Connecticut Public Policy. This count is predicated on the common law action in tort for the discharge of an at will employer "when the discharge contravenes a clear mandate of public policy"; Sheets v. Teddy's FrostedFoods, 179 Conn. 471, 474 (1980). The defendant alleges the discharge was motivated by plaintiff's desire to avoid payment of the entire amount of commissions due defendant on the Anacomp and United Beauty contracts. This court finds that defendant has not satisfied his burden of proof on this count.
 II
In the second count of his counterclaim, defendant alleges that plaintiff committed a breach of the implied duty of good faith and fair dealing. The count alleges that plaintiff terminated defendant without just cause in taking action to discharge him with an intent to deprive him of the commission compensation due and owing him. The court has previously found that defendant was hired under a contract of indefinite duration and was therefore an employee at will. The court has also found that the reason given by the employer was not a pretext but was real and factually based. In such circumstances the Supreme Court has held that an employee at will cannot maintain a cause of action for breach of an implied covenant of good faith and fair dealing based wholly upon a discharge without just cause. Magnanv. Anaconda Industries. Inc., 193 Conn. 558 (1984), Carbone v.Atlantic Richfield Co., 204 Conn. 460-61 (1987). It is certain that an employee at will cannot maintain such an action upon a CT Page 443 discharge wholly for just cause. Accordingly, defendant's second count must fail.
 III
The third count of defendant's counterclaim charges plaintiff with a breach of contract.
The count alleges that defendant is owed commissions based upon a percentage of bonuses and profits earned. This debt accrued based on work performed and contracts secured by defendant before his termination. It is not based on a finding of termination without just cause since the court has found the employee was an at will employee terminated for just cause. The predicate of defendant's claim is that his commission rate is 33 percent; the court has already found that his commission rate before termination was 25 percent on hardware and software and 7 percent on service. Defendant also challenges plaintiff's assertion that commissions would be computed on net revenue received from the customer and revenue from IBM. Net revenue is thus defined by reference to the offer letter (Exh. 1) and the 1992 commission plan and the practice of NYCONN as gross revenue from the customer and IBM less expenses including the cost of hardware, software, service or transaction costs, shipping expense and taxes. Defendant also challenged the computation of transaction or service costs but offered no proof the court finds the plaintiff's testimony that it charged $75 per hour credible and finds accordingly. Defendant claims a credit or commission on the Anacomp account. Plaintiff offered substantial evidence that the account not only did not generate any net revenue but actually produced a net loss.
The court finds that plaintiff's testimony on this issue is entirely credible and was unrebutted by defendant. The defendant is not entitled to a commission on the Anacomp account because the account did not produce net revenue. Plaintiff seeks to set off against the commissions undoubtedly due defendant on other accounts the loss it sustained on the Anacomp account, $34,430. The court finds that plaintiff has not sustained its burden of proof that it is entitled to this offset. Neither the offer letter, the 1992 commission plan or the practice of the plaintiff during defendant's employment substantiates this claim. The court denies the offset. While it may be true that defendant designed the Anacomp R5 6000 system which turned out to be flawed, it is equally true that Larry McDonald, a principal of NYCONN, signed CT Page 444 off on the design and must share the responsibility for its failure.
A substantial part of defendant's claim is based on the contract dated October 2, 1992 between NYCONN Data Systems, Inc. and United Beauty Supply, Inc. (Exh. 2) Exhibit C of the contract referenced IBM PS/2 point of sale terminals which were to be supplied on the demand of the customer at some point in the future. United Beauty was required under the contract to accept and did accept at least one of these units. The balance of twenty-two units was to be paid for on delivery at some future time. Defendant claims a commission of $44,594.55 is due him based on the sale of these remaining units. United Beauty has never accepted or paid for these units. NYCONN and United Beauty modified the contract orally at the closing of contract to give United the option of purchasing them from NYCONN or obtaining them from another vendor. Testimony from a United representative at the hearing indicated that recently United contracted with another vendor to purchase the same or similar units.
At the time the contract closed, United had no immediate use for the units and did not desire to inventory such costly items ($219,230) preferring to wait for possible price reductions. NYCONN consented to the modification and substantially completed the balance of the contract. The court finds that NYCONN received no net revenue from this portion of the contract and therefore defendant is not entitled to a commission on this uncompleted sale.
Defendant attempted to persuade the court that the reason United Beauty failed to purchase the Point of Sale units from NYCONN was its dissatisfaction with NYCONN's performance centering around the claimed inadequacies of the Warehouse 4GL software which NYCONN sold to United. Warehouse 4GL software was designed and developed by Arrow Paper Company and is presently owned by Arrow. United was and is licensed by Arrow to use it. The most credible testimony on NYCONN's performance regarding this software and other work of NYCONN came from Dennis Renna, the on-site data processing manager for United during the installation of the system by NYCONN. Renna testified that NYCONN's performance was satisfactory and in accordance with its contract obligations. The court concludes that defendant has failed to prove that his commission entitlement based on the United Beauty contract was in any way diminished by NYCONN's performance of its obligations under the contract with United Beauty. CT Page 445
During the course of the trial, the plaintiff submitted exhibits (HH) and (II) representing cost analysis on the United Beauty contract. The amount of subordinate data supporting these exhibits such as invoices, payments and credits was substantial. Exhibit HH, dated August 7, 1995, demonstrated a commission due and owing to defendant on hardware/software of $11,979 based on the commission calculus. Exhibit II demonstrated a commission due and owing defendant on hardware/software $13,124. Each exhibit demonstrated a service commission of $2,258. The court finds that based on Exhibit II as modified by the court to exclude the charge against defendant for the inventory file conversion, the defendant is due a commission on the United Beauty contract of $16,177. In addition defendant is entitled to a commission of $90 on the Santa Fuel account and the September IBM commission of $2,225.88. Thus the total commission due defendant is $18,492.88.
Judgment may enter for the defendant Richard Cottrell on the third count of his counterclaim against the plaintiff NYCONN Data Systems, Inc. in the amount of $18,492.88 plus interest from October 23, 1992 plus costs.
 IV
In the fourth count of his counterclaim, the defendant claims the commissions due him have been wrongfully withheld from him in violation of General Statutes §§ 31-72c, 31-71d and 31.72. Section 31-72 authorizes a recovery in a civil action of twice the full amount of such wages with costs and such reasonable attorney's fees as may be allowed by the court. Judicial construction of § 31-72 advises that "[I]n an action for wages brought pursuant to General Statutes § 31-72 awards for double damages and attorney's fees are inappropriate in the absence of the trial court's finding of `bad faith, arbitrariness or unreasonableness." Sansone v. Clifford, 219 Conn. 217, 229
(1991).
The court cannot make such a finding in this case. Plaintiff began negotiations in November 1992 and made a tender of a check in at least partial payments of acknowledged commissions due in early December 1992. It was not accepted because defendant disputed the total amount due and owing him, the rate at which he was to be paid and the concept (net revenue) on which commissions were to be computed. Defendant maintained during negotiations and during the trial that he was entitled to a commission immediately CT Page 446 on the point of sale portion of the contract even though no delivery was contemplated unless United exercised its option. The court cannot make a finding that the amount of compensation from commission due at his termination was clearly identifiable because of the dispute between the parties, Cort v. BristolMeyers, 385 Mass. 300, 431 N.E.2d 908 (1982). For these reasons the court finds that defendant has failed to sustain his burden of proof on the fourth count of his counterclaim.
Judgment may enter on the fourth count of defendant's counterclaim for the plaintiff.
 B
In Case No. 0247574, Richard Cottrell Jr. v. ThomasChernesky, the plaintiff's two count complaint is directed against a former associate and former fellow employee of NYCONN, Thomas Chernesky. The plaintiff asserts that because the defendant made false representations to him about computer systems and application hardware and software which the plaintiff proposed to United Beauty Systems and because the software did not satisfy the requirements of United the plaintiff lost substantial commissions and bonuses from the failed UBS transaction. The association between the plaintiff and the defendant developed before either became fellow employees of NYCONN. Prior to this employment, Chernesky, a technician, had become acquainted with Cottrell who prior to his employment was a salesperson at IBM. When Cottrell accepted employment with NYCONN, on February 1, 1992, Chernesky was employed as a technician for Target Data Systems and actively engaged in marketing a software application called Warehouse 4GL. This application was developed by an affiliate of Target Data, Arrow Paper.
Initially the relationship between Cottrell and Chernesky centered around an opportunity Cottrell developed at Anacomp. The solution to Anacomp was based on IBM RISC 6000 hardware. Although it is highly probable that Cottrell proposed this system, Cottrell maintained that it was actually designed by Chernesky. Chernesky was not hired by NYCONN until July 31, 1992 (Exh. Q); he did not actually get on the payroll until after the United Beauty contract was signed on October 2, 1992. Chernesky's hiring was based on his familiarity with the RISC 6000 hardware and the Warehouse 4GL system proposed for United Beauty. CT Page 447
On the Anacomp contract Target Data subcontracted some technical and network installation for NYCONN at the Stratford Anacomp location. Chernesky was the Target Data employee who performed this work. (Exh. R). After Chernesky came on the NYCONN payroll, he continued working on the Anacomp account. As noted in Part A, a consensus developed that the RISC 6000 hardware could not do the job required and NYCONN sustained a loss on the contract. The court cannot find any credible evidence that Chernesky was responsible for flawed Anacomp solution.
Chernesky's involvement with the United Beauty contract is equally blameless. Chernesky was selling Warehouse 4GL software. When Cottrell uncovered the United Beauty account, he concluded that the RISC 6000 hardware and Warehouse 4GL software would be a good match for United's requirements. Chernesky demonstrated the software to United Beauty representatives and an independent United Beauty consultant. The court finds that Chernesky did not misrepresent the software's capacity to either Cottrell or United Beauty. Plaintiff has engaged to prove the defendant of fraud; his burden is to satisfy the court by a standard of proof greater than that of ordinary civil issues; a mere preponderance of evidence will not do so as fraud must be "strictly proven by clear, precise and unequivocal evidence" Bound Brook Associationv. Norwalk., 198 Conn. 660, 666 (1986). Cottrell has not sustained this burden.
The court has considered Cottrell's claims for commissions and bonuses which were due Cottrell from the United Beauty contract in the prior case, NYCONN v. Cottrell, 0242202. These commissions and bonuses were established on the basis of Cottrell's contract with NYCONN. The amount of the commissions and bonuses did not conform to Cottrell's claims in his counterclaim because the court rejected Cottrell's method of calculation, not because NYCONN did not substantially perform the contract or because Chernesky made false representations about his ability to make the hardware and software comply with the customer's expectations.
In the second count of his complaint Cottrell places the blame on Chernesky for the CFOs prepared by Cottrell and submitted to IBM and rejected by IBM because the equipment was not located as represented by the CFOs.
The court has previously found that Chernesky did not authorize Cottrell to sign his name to these CFOs relating to CT Page 448 non-United Beauty contracts. The court finds that Chernesky did not misrepresent the content of the CFOs Cottrell submitted to IBM in reference to the United Beauty contract. Plaintiff claims that he was terminated from his employment as a result of the misrepresentations of the defendant and the fraudulent CFOs created therefrom. The plaintiff has not sustained his burden of proof on this count.
Accordingly judgment may enter for the defendant on file 0247574,Cottrell v. Chernesky.
In file 0242205S, NYCONN Data Systems, the court has previously decided that defendant is due certain commissions and plaintiff is not entitled to any offset against the commissions found for defendant on his counterclaim. Plaintiff has withdrawn any claim for a permanent injunction.
Plaintiff's amended complaint contains three counts. In the first count plaintiff claims damages as a result of misrepresentations by defendant Cottrell to various customers. The court finds that plaintiff has proved no damages.
In the second count plaintiff alleges that defendant knowingly submitted false and forged documents to IBM, a business partner of the plaintiff, causing financial loss to plaintiff as well as damage to plaintiff's business reputation with IBM.
The court finds that plaintiff did not provide sufficient proof of damages to permit an award.
In the third count plaintiff makes various charges against the defendant such as overselling customers, giving equipment away, underquoting maintenance costs, etc.
Plaintiff did offer some evidence to support these charges, but it was not sufficient to establish the amount of damages sustained by plaintiff. Accordingly the court cannot make an award to the plaintiff in this count.
Summing up these two cases: On Case No. 0242202, NYCONN DataSystems v. Richard J. Cottrell, the court finds for the defendant on the complaint. On the counterclaim by Cottrell, the court enters judgment for Cottrell in the amount of $18,492.88, plus costs, plus interest from October 23, 1992. CT Page 449
On Case No. 0247574, Richard J. Cottrell v. Thomas E.Chernesky, judgment may enter for the defendant.
Dorsey, J. State Trial Referee