[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff brings this action in two counts. The first count is breach of contract, claiming that the plaintiff employee is entitled to the payment of unused vacation pay and unused sick days under the terms of the employment contract which he claims incorporates terms of the employer's "Personnel Policies".
The second count claims damages for failure to pay said benefits under the provisions of Connecticut General Statutes §31-76K — "Payment of fringe benefits upon termination of employment."
The court finds the following facts. The plaintiff and the defendant entered into an agreement for employment of the plaintiff by the defendant on August 20, 1992. The contract provided for a base annual salary of $60,000 per year, payable semi-monthly. The contract also provided that the plaintiff would be entitled to ten days of absence due to illness or injury for the first year of employment, and thereafter for such absence for illness or injury up to twenty days in any one year. The agreement also provided for two weeks of vacation for the first year, three weeks of vacation for years two to five, and four weeks of vacation for each year thereafter.
There is no mention made in this agreement of any compensation to be paid to the plaintiff for unused sick time or unused vacation time. There is no mention made as to the effects of termination, except as to require that either party must give to the other party sixty (60) days notice to terminate the relationship. Hence a plain reading of the agreement of August 13, 1992 would not give to the plaintiff the right to compensation for unused sick time or unused vacation time. CT Page 675
 I
The plaintiff contends, in this first count, that the document entitled "Personnel Policies" as last revised November 1, 1987, prior to the plaintiff's employment, became part of the defendant's contractual obligation to the plaintiff.
That document, exhibit 3, provides, in paragraph (B), captioned "Sick Time", "An employee accumulates one-half day of sick leave per month which can be accumulated up to 18 days. After accumulation of eighteen days the employee is reimbursed at the end of the fiscal year for the excess days in accordance with his or her wage scale. Sick leave compensation may not be borrowed ahead. Any unused sick time will be paid upon termination of employment for any reason."
The policy does not specifically provide that vacation time may be accumulated. It merely provides that "any unused sick leave and pro rated vacation time will be paid upon departure." The proration for vacation time is interpreted by the parties as a pro rating of vacation time accrued for that year and not for past years.
The last sentence of the "Personnel Policies" provides "Nothing in these policies is intended to create nor should it be construed as creating an express or implied employment contract."
The plaintiff first read these "Personnel Policies" after he signed the employment agreement and after he started his employment. The plaintiff does not claim that he was induced to enter the employment by virtue of any promise or representation made to him as to benefits contained in the "Personnel Policies" or as to any benefits which would be reflective of those benefits contained in the "Personnel Policies".
The Supreme Court has dealt in detail with the proposition of incorporating the terms of an employee handbook, or here a written "Personnel Policy" into, and superimposing its terms upon an employment contract. See Torosyan v. Boehringer IngelheimPharmaceuticals, Inc., 234 Conn. 1 (1995).
Initially, the trier is required to find that oral representations, or issuance of the handbook, was an "offer" — a promise in connection with prospective employment, and hence an acceptance of that offer. As aforesaid there is no evidence to CT Page 676 support that proposition in this case.
Subsequent oral representations by the issuance of subsequent handbooks must be evaluated by the same criteria. That is, an offer to modify preexisting terms by substituting a new implied contract for the old, which offer must be accepted. Here again there is no evidence to support that proposition in this case. For a full analysis of these factors see Torosyan, supra, pp. 14, 15.
The court determines that the plaintiff cannot prevail on his claim for breach of contract for accumulated sick time or vacation pay under the first count of the complaint.
 II
The plaintiff contends, in the second count of the complaint, that he is entitled to receive payment for unused sick time and unused vacation time in accordance with the employer policy, as provided by General Statutes § 31-76K, and enforceable by this civil action in accordance with General Statutes § 31-72.
As aforesaid, the "Personnel Policies" document provides for the accumulation of sick days and pro-rated vacation time. The plaintiff's contract with the defendant provides for ten days of sick time during the first year of employment, and thereafter for twenty days in any one year. The contract also provides for vacation days — two weeks in the first year, three weeks in years two to five, and four weeks in years subsequent to year five.
The plaintiff's contract does not deal with the proposition of accumulation of either sick time or vacation time. The "Personnel Policies" document does not attempt to distinguish between different categories of employees, nor does the "Personnel Policies" document single out any individual employee by job description as being excluded from or treated in a different fashion as concerns accumulation of sick days or vacation days.
General Statutes § 31-71a states "(2) Employee includes any person suffered or permitted to work for an employer." Unquestionably the plaintiff is an employee as defined by the statute.
The court determines that there is no inconsistency between the CT Page 677 plaintiff's contract and the "Personnel Policies" as concerns accumulation of sick pay and vacation pay. Had the defendant chose to exclude the plaintiff from the provisions of this policy it could well have bargained for such a provision when it drafted the contract. No logical reason is advanced as to why the plaintiff should be excluded from this policy provision, as the same motivation or inducement which is provided by this policy would have no less applicability to the plaintiff than other employees performing other types of activities.
The case of Fennell v. Hartford, 238 Conn. 809 (1996) does not support the defendant's contention as concerns classes of employees. In that case the policy in question dealt with different categories of employees whose accrued sick leave benefits were treated differently according to specified sections of personnel rules and regulations. There is no such delineation in this defendant's personnel policies.
The court determines that the plaintiff is entitled to payment for unused sick days and unused vacation days in accordance withand as limited by the "Personnel Policies".
The court determines from the evidence that there is no carry over from period to period for unused vacation time. Unused vacation time is based upon service in the previous year (1996) and accrues as of January 1 the following year (1997). The demand letter of the plaintiff calls for fifteen days of unused vacation time; Exhibit 5 uses 22.5 days, but the plaintiff's contract, Exhibit 2, allows only 20 days.
The court determines that twenty days, less three days used, results in an entitlement of seventeen days. Hence the court awards compensation for seventeen days of unused vacation time.
As concerns sick time. The "Personnel Policy", Exhibit 3, Section (B) "Sick Leave", provides "After accumulation of eighteen (18) days the employee is reimbursed at the end of the fiscal year for the excess in accordance with his or her wage scale." The prior sentence states ". . . which can be accumulated up to eighteen (18) days." Because there is no specific mention of the plaintiff or his position the court determines that he, like all other employees, may accumulate up to eighteen days of accumulated sick leave time.
The plaintiff had the right to receive payment for the CT Page 678 accumulated eighteen sick days "at the end of the fiscal year(s)." He chose not to do so as the years progressed. He was, however, the administrator of the "Personnel Policies". That was his responsibility. As concerns himself, he testified that it would be a nice savings "kitty" to accumulate. However, as aforesaid the policy provides that it can be accumulated only up to eighteen days.
The plaintiff had no right or power to change or alter the policy to suit himself. To allow for accumulations beyond the eighteen days finds no support in the exhibits or in testimony. It is obvious that an employer, in a voluntary fringe benefit package, has the right to limit the amount of accumulation of such sick pay for reimbursement purposes, which comports with good business practice.
The court finds that the plaintiff had the right to be paid for eighteen days of accumulated sick time when he terminated his employment.
The court finds that the plaintiff has demonstrated his right to payment for the seventeen days of accumulated vacation and eighteen days of accumulated sick pay, for a total of thirty-five days. The plaintiff's salary, when he departed was $5,500 per month. This constitutes $66,000 per year, being $180.82 per day, which amounts to $6,328.70 for the said 35 days. The court does not credit the plaintiff's contention that he is entitled to additional pension plan contributions based upon these amounts.
The plaintiff seeks, in the complaint, statutory damages under General Statutes § 31-72. Connecticut General Statutes § 31-72
provides that such employee may recover in a civil action, twice the full amount of such wages, with costs and reasonable attorney's fees as may be allowed by the court.
"In an action for wages brought pursuant to General Statutes §31-72 awards for double damages and attorney fees are inappropriate in the absence of the trial court's finding of `bad faith, arbitrariness or unreasonableness.'" Sansone v. Clifford,219 Conn. 217, 229 (1991). This court finds that there was no bad faith, arbitrariness or unreasonableness on the part of the defendant Rockville Orthopedic Associates, P.C. Judgment enters for the plaintiff in the amount of $6,328.70.
L. Paul Sullivan, J. CT Page 679